**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

BOBBY RYDALE THOMAS,

    Petitioner,

v.                                        Case No. 8:06-CV-00008-T-24MAP

JAMES R. MCDONOUGH[1],

    Respondent.
_____/

## **ORDER**

This cause is before the court upon Petitioner Bobby Rydale Thomas's ("Thomas") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Thomas challenges his 2002 convictions entered by the Thirteenth Judicial Circuit Court, Hillsborough County, Florida. (Dkt. 1). Respondent has filed a response to the petition (Dkt. 12), and Thomas has filed a reply thereto (Dkt. 17).

**Background**

Thomas was charged in a three count Amended Information dated February 14, 2002, with burglary of a structure (Count 1), grand theft (Count 2) and criminal mischief (Count 3). (Dkt. 14, Ex. 19, Vol. I, p. 18-23).[2] Represented by court-appointed counsel, Thomas proceeded to jury trial on November 13, 2002. The jury found Thomas guilty of

---

[1] In his petition, Thomas names James V. Crosby, Jr., former Secretary of the Department of Corrections, as the party respondent in this case. As of the date of this order, James R. McDonough is the Secretary of the Department of Corrections. Accordingly, pursuant to Rule 25 of the Federal Rules of Civil Procedure and Rule 2 of the Rules Governing Section 2254 Cases, the Court will substitute McDonough as Respondent. *See* Fed. R. Civ. P. 25(d); Rule 2(a), Rules Governing Section 2254 Cases (2006).

[2] Respondent has filed with its response the four-volume record on direct appeal from the state district court of appeal. (Dkt. 16, Ex. 19, Vols. I-IV). The page numbers of references in these volumes are designated by the page numbers located in the bottom right-hand corner of the page.

burglary of a structure and grand theft, and not guilty of criminal mischief. (Dkt. 14, Ex. 19, Vol. I, p. 68). The state trial court thereafter sentenced Thomas to concurrent terms of imprisonment of five years on Counts 1 and 2. (Dkt. 14, Ex. 19, Vol. I, pp. 76-78).

Thomas, through court-appointed counsel, timely filed a notice of direct appeal on December 2, 2002. Appellate counsel filed an *Anders* brief, stating that he could find no meritorious argument to support the contention that the trial court committed significant reversible error in the case. (Dkt. 14, Ex. 1). Although given the opportunity to file a supplemental *pro se* brief on appeal, Thomas did not do so. (Dkt. 14, Ex. 2). On December 24, 2003, the state district court of appeal per curiam affirmed Thomas's convictions. (Dkt. 14, Ex. 4); *See Thomas v. State*, 865 So.2d 502 (Fla. 2d DCA 2003) [Table]. The mandate issued on January 28, 2004. (Dkt. 14, Ex. 2).

On January 3, 2004, Thomas, proceeding *pro se*, filed a motion to correct an illegal sentence pursuant to Fla. R. Crim. P. 3.850.[3] (Dkt. 14, Ex. 5). In his motion, Thomas alleged that trial counsel was ineffective in failing to: (1) conduct adequate pretrial investigation, and (2) utilize a peremptory challenge to strike a biased juror. (Dkt. 14, Ex. 5). On February 27, 2004, the state trial court dismissed Thomas's Rule 3.850 motion without prejudice for failure to sign a proper oath. (Dkt. 14, Ex. 6).

On March 5, 2004, Thomas refiled the motion with the proper oath. (Dkt. 14, Ex. 7). On May 24, 2004, the state trial court ordered the State to respond to Thomas's Rule 3.850

---

[3] For purposes of calculating the limitations period under the AEDPA, the Court will give Thomas the benefit of the "mailbox rule" and consider his § 2254 petition and documents related thereto as "filed" on the date Thomas signed and delivered them to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999). The Court will also give Thomas the benefit of this rule with respect to his state court filings when calculating the limitations period under § 2244(d).

motion (Dkt. 14, Ex. 8) which it did on August 23, 2004. (Dkt. 14, Ex. 9). In its response, the State requested an evidentiary hearing on Thomas's two claims of ineffective assistance of counsel. (Id.). A hearing was held in the state trial court on January 5, 2005. (Dkt. 14. Ex. 10).

By order entered on March 7, 2005, the state trial court denied Thomas's Rule 3.850 motion. (Dkt. 14, Ex. 11). Thomas appealed the adverse ruling and the state district court of appeal per curiam affirmed the state trial court's denial of post-conviction relief on September 16, 2005. *See Thomas v. State*, 915 So.2d 1214 (Fla. 2d DCA 2005) [Table].

On September 22, 2005, Thomas filed a motion for rehearing of the denial of his Rule 3.850 motion in the state district court of appeal (Case No. 2D05-0652). On November 2, 2005, the motion was denied and the mandate issued on November 21, 2005. (Dkt. 9, Exs. 17, 18).

The instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was signed and dated by Thomas on December 28, 2005, and received by this Court on January 3, 2006. The petition is timely. Upon review of the record, Thomas's petition must be DENIED.

**Standard of Review**

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and

enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002) ("[T]he statutory language [in § 2254(d)(1)] focuses on the result, not the reasoning that led to the result, and nothing in that language requires the state court adjudication that has resulted in a decision to be accompanied by an opinion that explains the state court's rationale). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

Since Thomas's conviction was entered after the AEDPA was enacted, his petition is subject to the provisions thereof. Because a state court initially considered the issues raised in the petition, § 2254(d) governs the review of Thomas's claim. *See Mobley v.*

*Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

## Standard for Ineffective Assistance of Counsel Claims

In each of the claims for relief presented in the instant petition, Thomas asserts that his right to effective assistance of counsel was violated. The Sixth Amendment protects a defendant's right to the effective assistance of counsel during criminal proceedings against him. To prevail on a claim of ineffective assistance of counsel, Thomas must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" considering the circumstances as they existed at the time of representation. *Id.* at 687-88. This requires him to overcome a strong presumption that his attorney's performance was within the range of competence demanded of attorneys defending criminal cases. *Id.* at 689. Second, even if Thomas can show that counsel performed incompetently, he must also show that he was prejudiced in such a manner that, but for counsel's errors, there exists a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 688, 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Id.* at 694.

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318,

1322 (11th Cir. 2002) *(citing Chandler*, 218 F.3d at 1315). Counsel's trial strategy cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler,* 218 F.3d at 1314 (*quoting Strickland,* 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment. As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act." Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15.

As set forth below, in rejecting Thomas's claims on the merits, the state trial court applied the *Strickland* standard of review for ineffective assistance of counsel claims. Thus, to establish that he is entitled to relief on these claims pursuant to § 2254, Thomas must establish that the state trial court incorrectly applied the *Strickland* standard in reaching its determination that these claims lack merit. *See Parker*, 331 F.3d at 766.

## Discussion

**Ground One**

In his first claim, Thomas alleges that his attorney was ineffective in failing to conduct an adequate pretrial investigation. He contends that his attorney failed to investigate or prepare the defense that the burglary of the business never occurred and that it was created by the victim as part of an insurance scam. He presented this same

6

claim to the state trial court in his Rule 3.850 motion.

At the evidentiary hearing on the Rule 3.850 motion held on January 5, 2005, Thomas's trial attorney testified that one of his theories of defense was that the alleged burglary was part of an insurance scam. Specifically, counsel testified as follows:

| | |
|---|---|
| MS. JAMES:[4] | As to the first ground, am I correct in saying that during your closing argument, at two different points, you argued to the jury that this was scam, it was something the victims used to pull a fast one? |
| MR. ROGOZINSKI:[5] | Yes. |
| MS. JAMES: | Is that correct, the way you characterized it? |
| MR. ROGOZINSKI: | Yeah. That was the theory of defense, yes. |

(Dkt. 14, Ex. 10). When questioned by Thomas's post-conviction counsel as to whether Rogozinski had taken any depositions related to the insurance scam theory, Rogozinski testified that he had not and stated his reasoning as follows:

| | |
|---|---|
| MS. JAMES: | Now, as to the specific claim that there was a scam, did you take any depositions in the case? |
| MR. ROGOZINSKI: | No. |
| MS. JAMES: | And why not? |
| MR. ROGOZINSKI: | Well, the reason I didn't was because up until the day of trial, until we started questioning the witnesses, the State had no idea what my theory of defense was going to be. And if I had taken the deposition of anyone, questioning them about, you know, the insurance type of issue, the insurance scam, which was what we were arguing, I would have tipped my hat to the State, and that was just a trial tactic. |

---

[4] Thomas was represented at the evidentiary hearing by attorney Theda James.

[5] Thomas was represented at trial by attorney Jason Rogozinski.

(Dkt. 14, Ex. 10). Furthermore, on cross examination by the Assistant State Attorney, Rogozinski testified that, in this particular case, he made a conscious decision not to take depositions and that he did conduct pretrial investigation with an investigator from the Public Defender's Office. (Dkt. 14, Ex. 10, pp. 391-393).[6] At the conclusion of the hearing, the state trial court orally denied this claim. (Dkt. 14, Ex. 10, pp. 416-18).

Relying upon the standard established in *Strickland*, the state trial court in its written order denying Thomas's Rule 3.850 motion held as follows with respect to this claim:

> In ground one, Defendant contends that his counsel was ineffective for failing to conduct an adequate pretrial investigation. Specifically, Defendant contends that counsel did not thoroughly investigate the possibility of an insurance scam to bolster that theory of defense.
>
> At the evidentiary hearing, trial counsel for Defendant, Jason Rogozinski, testified that it was his strategy to forego taking depositions that would have "tipped [his] hat to the State" regarding the theory of defense. (See January 5, 2005 Transcript, p. 9, ll. 20-21, attached). The Court finds that counsel's trial tactics were reasonable based on the testimony of trial counsel. (See January 5, 2005 Transcript, pp. 17-22, attached). As such, Defendant is not entitled to any relief on this ground.

(Dkt. 14, Ex. 10, pp. 431-32). Thus, to establish that he is entitled to relief on this claim, Thomas must show that the state trial court incorrectly applied the *Strickland* standard in reaching its determination that this claim lacks merit. He has not made this showing.

In the instant petition, Thomas has presented the exact same claim and argument raised in his Rule 3.850 motion. In fact, to state his claim and argument in support thereof, he simply attached to the § 2254 form copies of the pertinent pages of his Rule 3.850 motion. He has not presented anything new to support his claim. Thomas makes a generalized and conclusory argument that the alleged failure to introduce evidence to

---

[6] Respondent's Exhibit 10 is the transcript of the hearing on Thomas's Rule 3.850 motion. The page numbers referenced in this Order are those found at the bottom right-hand corner of the page.

support the insurance scam defense amounted to a breakdown of the adversarial process. Trial counsel articulated to the state trial court the underlying reasons behind his tactical decisions. Thomas has not demonstrated that counsel's decision not to take depositions or subpoena various records was anything other than trial strategy. Disagreements by a defendant with tactics and/or strategies will not support a claim of ineffective assistance of counsel; and, a petitioner in habeas corpus must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. *See Norman v. Bradshaw*, 2006 WL 3253121at *10 (N.D. Ohio, Nov. 8, 2006) (*citing Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56,59 (6th Cir. 1990)).

Even assuming, *arguendo,* that such alleged failure by counsel to pursue the strategy Thomas now describes amounted to deficient performance, he has made no showing that such actions prejudiced him in any way such that the outcome of his trial would have been different. In the absence of an allegation of prejudice, a claim of ineffective assistance of counsel cannot succeed because it does not satisfy the requirements of *Strickland*. Based on the bare allegations presented to support this claim and the evidence adduced at the evidentiary hearing on Thomas's rule 3.850 motion, the state trial court's rejection of the claim was a reasonable application of the *Strickland* standard. Thus, Thomas is not entitled to federal habeas relief on this claim.

**Ground Two**

Thomas claims that his trial attorney rendered ineffective assistance in failing to utilize a peremptory challenge to strike a biased juror. He contends that during jury selection, prospective juror Charleen Krasnay ("Krasnay") was questioned about her views concerning the credibility of law enforcement officers and responded that "[she] would

9

probably give more credibility to law enforcement because they deal with people all the time." (Dkt. 14, Ex. 14, Vol. II, p. 44). Thomas asserts that he expressed his desire to have Krasnay struck from the jury panel and that his attorney's failure to exercise a peremptory strike was negligent.

Thomas presented this same claim in his Rule 3.850 motion. At the hearing on that motion, trial counsel testified on direct examination as follows with respect to this allegation:

| | |
|---|---|
| MS. JAMES: | I'm going to ask you about Ground 2. That ground deals with your failure to utilize a peremptory strike to eliminate a biased juror, Juror Krasne[7], No. 6. |
| | Now, is it fair to say that during the voir dire of that juror, she made the following statement: "I think I would probably give more credibility to law enforcement because they deal with people all the time?" Do you recall that juror saying that? |
| MR. ROGOZINSKI: | Yes. |
| MS. JAMES: | And did you then exercise a for cause challenge in order to eliminate that juror? |
| MR. ROGOZINSKI: | Yes. |
| MS. JAMES: | Now, at the end of that argument, was it granted? |
| MR. ROGOZINSKI: | No. |
| MS. JAMES: | During the transcript that you and I both reviewed, you took a recess, or you asked for a brief moment to speak with your client? |
| MR. ROGOZINKSI: | That's right. |
| MS. JAMES: | And one of the allegations in this involves those communications that took place during that brief recess. Did you discuss with Mr. Thomas the strategy that you |

---

[7] In the trial transcript, this juror's last name is spelled "Krasnay."

|  |  |
|---|---|
|  | were going to use with respect to this biased juror? |
| MR. ROGOZINSKI: | Not that I recall.  What I recall happening, if I'm right, was once that came up, I challenged it for cause.  I believe the transcript is clear that there was a little bit of a conversation with the judge.  And then Ms. Gabbard [the Assistant State Attorney], actually, I think had rehabilitated the witness (sic).  The judge had agreed that that had been done. |
|  | I took a moment to discuss it with Mr. Thomas.  That's very clear in the record.  I took a moment.  I discussed it with Mr. Thomas, came back and said, "That's fine; we'll strike that challenge now." |
|  | I know that in the allegation, in the motion, it says something to the effect that I guaranteed that I would use one of my peremptory challenges to make sure that she was gone.  You know, I like my client, but the reality is, I don't make guaranties like that because you can't make a guaranty [sic] when I don't know what the State Attorney is going to do prior - because this is Juror No. 14, if I remember, but there are 13 prior jurors.  I can never guaranty [sic] anything.  You have to see how it goes.  So I don't recall guaranteeing anything. |
| MS. JAMES: | Let me back up a little bit.  So you withdrew the for cause challenge against Juror Krasne? |
| MR. ROGOZINKSI: | After I discussed it with my client. |
| MS. JAMES: | Did you then exercise a peremptory challenge to move to strike her? |
| MR. ROGOZINKSI: | No. |
| MS. JAMES: | And did you have one peremptory left? |
| MR. ROGOZINKSI: | Yes. |
| MS. JAMES: | Why didn't you move to strike her peremptorily? |
| MR. ROGOZINSKI: | I'm going to – I can't tell you exactly what the conversation was, but when she came up again, I know that I once again took a moment, discussed it with my |

11

|   |   |
|---|---|
|   | client, and came back and said, "We're going to keep her." |
|   | I had the challenge. If my client, you know, had felt at that time, you know, that we needed to get rid of her, my client would have said that. My client was extremely active in the case. He's a very intelligent guy. We talked about every aspect of this case. We met. You know, he knew the theory of defense going in. And when it came to jury selection, he was involved in it the entire time on every juror. We discussed everyone. |
|   | So, at that time, with a challenge ready to go and her being the last one, if my client had an objection to that – he was very clear with me on those things – I would have used it. There would be no reason not to use that challenge at that time. |
| THE COURT: | Are you saying that he did not ask you to use that challenge? |
| MR. ROGOZINSKI: | Yes, that's exactly what I'm saying. At that point, no, he didn't. I would have turned around and done it. I would have done anything Mr. Thomas asked me to at that time. I like him that much. |
| MS. JAMES: | It's your recollection, you discussed it with Mr. Thomas? |
| MR. ROGOZINSKI: | Yes. |
| MS. JAMES: | He agreed not to exercise the strike? |
| MR. ROGOZINSKI: | Yes, because I think the witness (sic) had already been rehabilitated and we were fine with it. |
| THE COURT: | You mean the juror? |
| MR. ROGOZINKSI: | I mean the juror. Sorry. |

(Dkt. 14, Ex. 10, pp. 387-91). At the conclusion of the hearing, the state trial court orally denied this claim of Thomas's Rule 3.850 motion. (Dkt. 14, Ex. 10, pp. 415-16).

In its written order denying this claim of ineffective assistance, the state trial court

12

found that counsel did not perform deficiently. Specifically, the court held:

> In ground two, Defendant contends that his counsel was ineffective for failing to use a peremptory challenge to strike a biased juror.
>
> Based on trial counsel's testimony at the January 5, 2005 hearing, it is apparent that trial counsel utilized sound trial strategy in accepting the juror. (See January 5, 2005 Transcript, pp. 14-17, 22-26, attached). Furthermore, Defendant failed to demonstrate any resulting prejudice due to counsel's failure to strike the juror. (See January 5, 2005 Transcript, p. 32, attached). As such, Defendant is not entitled to any relief on this ground.

(Dkt. 14, Ex. 10, p. 432).

The record supports the state trial court's finding. Thomas does not argue to the contrary in the instant motion or even suggest that the state trial court's finding on this issue was inaccurate or erroneous. He does not argue that the state trial court erred in its application of *Strickland* to this claim. Just as in his Rule 3.850 motion, Thomas has not made any showing that counsel's failure to use the peremptory challenge to strike Krasne prejudiced him in any way such that the jury would not have convicted him. *See Strickland*, 466 U.S. at 694. "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Thomas has failed to establish that the state trial court's denial of this claim of ineffective assistance of trial counsel was contrary to or an unreasonable application of the *Strickland* standard or resulted in a decision that is based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Thus, relief on this ground will be denied.

Accordingly, the Court orders:

That Thomas's § 2254 petition is denied, with prejudice. The Clerk is directed to

enter judgment against Thomas and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 27, 2007.

*signature: Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Bobby Rydale Thomas